HARVEY B. HURD, impleaded, etc., Appellant, *v.* CYRUS R. HAGGERTY, Appellee.

### APPEAL FROM COOK.

The declaration of a partner in reference to the entry upon a book open to the inspection of all the partners, stating why it was made, and explaining the transaction, is proper proof to the jury, such declaration being a part of the *res gesta.*

Whether a partnership has assumed a debt or not, by giving a firm note, is for the jury; and the statements of one of the partners, showing that this had been done, is proper evidence.

The declarations of one member of a firm, stating that a note signed by himself, was for the benefit of the partnership, are not proper evidence to prove a joint liability.

A partner may not avoid a joint note, because it is usurious, unless it appears that he expressly forbid the making of it.

THE declaration in this case is upon a note of Dunlap, Wright & Co., with common counts added.

Hurd pleaded the general issue; and that he did not make the note as partner, etc., or otherwise, or authorize the same to be done; and usury.

There was a default against Dunlap, Colburn and Wright; trial as to Hurd; and assessment against the other defendants.

The cause was tried by a jury, before MANNIERE, Judge, and resulted in a judgment against all the defendants, for $924.52.

H. B. HURD, *pro se.*

HOYNE, MILLER & LEWIS, for Appellee.

BREESE, J. The evidence in this case shows, that on the 27th August, 1855, Dunlap, one of the firm of Dunlap, Wright & Co., of which the appellant was a member, executed his individual note to the appellee, for six hundred dollars, with the guarantee of F. H. Benson. This note not being paid, on the third of March, 1856, Dunlap gave another note to Haggerty, of the following tenor, on which this suit is brought:

$665.                                             *March* 3, 1856.

   Eight months after date, we promise to pay to the order of C. R. Haggerty or order, Six Hundred Sixty-five Dollars, value received, with interest 10 per cent. per annum; and it is further agreed that the parties shall pay fifty cents per day for each and every day said note remains unpaid after due, as damages for non-payment; being for money loaned.

                         DUNLAP, WRIGHT & CO.

The defendant filed a plea, verified by affidavit, denying the execution of the note by him as a partner, or by any person having authority; and usury. The other defendants not pleading, their default was entered.

The appellant showed, on the trial, the note executed in August, 1855, with the signature torn off, and contended that this note was given for the individual debt of Dunlap, and introduced the books of the firm to prove it. In their day book, there appeared, in the handwriting of Dunlap, as a credit to him, this entry: "Aug. 28, 1855. By money borrowed of Cyrus R. Haggerty, $600." In the cash book of the firm, the following entry appeared: "Aug. 28, 1855. To sawing, 62 cts., cash, R. L. Dunlap, $600, $600.62." In the ledger of the firm, in the individual account of R. L. Dunlap with the firm, is the following entry: "Aug. 28, 1855. Cash, $600." Across this entry was a black line drawn with a pen.

The appellant proved by a witness, T. L. Forrest, that these entries were in the handwriting of Dunlap, who had the prin-

cipal charge of the financial business of the firm, and that Hurd was a practicing lawyer; and he further proved, by J. G. Mott, that the note in suit was given to take up this note of August 27th.

The inference sought to be drawn from these facts by the appellant, is, that the money borrowed in August, was borrowed on the individual responsibility of Dunlap, and that he claimed a credit for it on the books, as having loaned it to the company, and that the note in suit was given to take up that note, and which, being for his own individual debt, unconnected with the firm, the firm never was liable for, and therefore, giving this note for such a purpose was a fraud upon the other members of the firm.

The question, what was done with the money raised by the note of August, was left to the jury, on the evidence, and they have found, it went to pay a debt due by the firm to Wilcox, Lyon & Co., and for which each member of the firm was responsible. If this be so, then it could be no fraud on the firm, on a renewal of that note, to pledge the firm for its payment.

Dunlap got no credit really, on the books, as money loaned by him to the firm, for the proceeds of the first note, for that entry, showing a credit to him, was erased, and explained by the book-keeper, Scott, as having been so entered by mistake, according to Dunlap's statement to him. Scott says he was the book-keeper of the firm from Nov. 1, 1855, to May 1, 1856, and when he went there, Dunlap requested him to look over the books, as his former book-keeper had made mistakes, and that sometime early in November he discovered this credit, " slashed over with a pen," and called Dunlap's attention to it; that somewhere between the 10th and 12th of November, 1855, Dunlap said, in speaking of this entry, that it was a partnership transaction—it ought not to be so entered, and therefore it was stricken out. While speaking about it, Wright came in and asked about it; Dunlap called his attention to it, and remarked that the amount was used to pay an indebtedness of the firm to Wilcox, Lyon & Co., and therefore he said it ought not to be placed to his credit, which Wright admitted, in substance. It was left out of the footing of the account; he made the footing and balanced the amount about the 1st June, 1856; the books were left open, so that any member of the firm could see them; thinks he saw Hurd there two or three times; the other members of the firm occasionally looked at the books.

This evidence appellant objected to, and moved to exclude it, but the court admitted it, and we think properly, it being an explanation simply, of an entry in the books which the appel-

lant had put in evidence, and which went to show, that when the note in suit was given, the amount of the first note was not standing to the credit of Dunlap, and that appellant had the opportunity of knowing it, the books being open to him and subject to his daily inspection. It was a part of the *res gesta*, and allowable, on the principle that what a party says in doing an act, or directing it to be done, is to be taken in connection with the act done, to explain it.

This witness also stated, that he was present when Haggerty came with the note given in August, when the note in suit was given, and heard Dunlap speak about it—before or about the time it became due, Dunlap said he was unable to raise the money and meet it; said he would see Hurd and Haggerty, and see if he could get it renewed, and when Haggerty came with the note, Dunlap said to him he had seen Hurd about the matter and had talked with him, and that Hurd had advised him to renew it—the note in suit is the renewal note—Dunlap went away from the office several times to see if he could raise the money.

This testimony was also objected to, but admitted, and exception taken.

The question, as the case then stood, was, had the indebtedness created by the note of August 27th, been assumed by the firm, which was for the jury to decide, and it was competent for that purpose, and for the purpose of showing that the indebtedness in the first instance was created for the benefit of the firm and on the firm credit, and was a part of the entire transaction. It is true, where a note made in the name of one partner is sued on, and there is no evidence to show it was a partnership debt, the declarations of the maker cannot be used for such purpose, but if it has been executed in the partnership name, and attacked as having been made by an individual partner to pay his own debt, then the declarations of the partner who executed the note, with the circumstances attending its execution, must, under some qualifications, go in evidence, the court always having it in its power, in its instructions to the jury, to protect the other partners. This was done by the court, by this instruction : " If the jury find, from the evidence, that the money for which the note in question was given, was a separate loan by the plaintiff to Dunlap, and upon his individual *credit alone*, then the jury will disregard the declarations of R. L. Dunlap, or any of the other defendants, as against Hurd. Those declarations were not given as evidence of the responsibility of defendant Hurd, but only in explanation of the entries made by Dunlap upon the books, *in reference to the transactions;* and it is for the jury to say what effect and weight shall be

given to the entries, and Dunlap's declarations in reference thereto, in determining the question whether the money was borrowed upon Dunlap's individual credit, or upon the credit of the firm."

But upon the broad principle, as evolved by the instructions asked by the parties and the manner in which the court disposed of them:—

The instruction quoted above, was given by the court in lieu of the second instruction asked by the defendant, to the effect, if the jury find, from the evidence, that the money for which the note was given, was loaned by the plaintiff to Dunlap, and upon his individual security, then the jury will disregard the declarations of Dunlap or any of the other defendants, those declarations not being admitted as evidence of Hurd's responsibility, but only in explanation of the entry of the credit to Dunlap on the books, and it is for the jury to say what effect shall be given to them in that respect.

The instruction given by the court accomplished all that was designed by the appellant, at the same time it directed the minds of the jury to the true character of the transaction. If the money was borrowed on Dunlap's individual credit, so that he might claim a credit for it from the firm by entering it on the books of the firm to his credit, and had actually so done, his declarations and acts ought to have gone to the jury to show the *bona fides* or the *mala fides* of the erasure of the entry from the books. If it had been entered to his credit by mistake, merely, it was competent for him to direct his book-keeper to erase it, the jury judging of the fairness of the transaction.

The instruction given by the court in place of the defendant's third instruction, presents the law of the whole case, usury and all, to the jury upon the evidence, in a manner as favorable to the appellant as he had a right to require. It is as follows: " Although the jury find that Hurd was a partner of the firm of Dunlap, Wright & Co., at the time, etc., the note was given, unless they shall also find that the note was given in the ordinary course of business of the firm; and for money obtained upon the credit of the firm; or that Hurd expressly authorized the giving of the note, they will find for the defendant, Hurd."

The appellant also asked the court to instruct the jury as follows, being his seventh instruction: " If the jury believe, from the evidence, that the contract between Dunlap and the plaintiff was usurious, and the note was given for a usurious loan, then—unless they also find, from the evidence, that Hurd authorized such contract, or the giving of the note—they will find for the defendant, Hurd." This instruction the court refused. It assumes that appellant must have authorized the

execution of this particular note before he can be held liable, and that no authority can be presumed as having been given by one partner to violate the law, the right of one partner to bind his copartner extending only to lawful contracts; that it is a question of authority, and quite different from that between actual parties to a usurious contract. In support of these views the case of *Hutchings* v. *Turner*, 8 Humphrey's (Tenn.) 415, is cited.

By the law of Tennessee, as appears from the opinion of the court in this case, it is an indictable offense to reserve more than six per cent. interest on the loan or forbearance of money —it is a criminal offense, and it cannot be presumed one partner has authority to implicate his copartner in a criminal act without his knowledge or consent. Not having the laws of Tennessee before us, we cannot say what the provisions of their law on the subject of usury may be, but we would infer from the fact that it is a criminal offense, that the usury forfeited the debt. If not so, then we think this decision is erroneous in not holding the party responsible for the real debt due, stripped of its usury, if it was contracted to raise funds to carry on the business of the firm, and was so applied. In this State, the whole interest only is forfeited, and in a suit brought against a partnership in this State, when one partner sets up usury, the note being for a partnership debt justly due, he could have no relief, except to the extent of the usury—all that was good in the note he would be required to pay, relieved from the bad by his defense of usury. He could be placed on no better ground than any other debtors pleading usury.

Again, it is proved in this case that Dunlap was the financial manager of this concern, and if appellant knew, from the books of the concern, that higher rates for money beyond the legal rates had been frequently allowed by the firm, an authority to do so in this particular case might be implied, if there was any evidence that a higher rate of interest than is allowed by law had been reserved, which we do not find proved.

There are entries on the books of this firm of an allowance of interest on their indebtedness of twenty per cent. per annum. The instruction would preclude the jury from drawing any inference from evidence of this character. If a partnership has to resort to borrowing to carry on its business, and it is shown to be not unusual for the financial manager of such partnership to take up money at heavy rates, and the other partners have means to be informed of it, they, ought certainly to be held liable, even if it cannot be shown they had knowledge of the execution of a particular note made under such circumstances.

The court, however, did instruct the jury on the subject of the alleged usury as follows: " If the jury shall find, from the evi-

dence, that the note in question was given by the defendants, and that they are jointly liable thereon; and if they shall further find, that a greater rate of interest than ten per cent. was reserved by the contract—then the jury will find a special verdict, setting forth: first, the amount of the principal sum actually loaned; and secondly, the amount of the whole interest reserved or taken, which is now due." The jury found a general verdict, thus ignoring all proof of usury.

The court further instructed the jury, "If they find, from the evidence, that the loan was originally made to R. L. Dunlap, for a private debt, and upon his individual note and credit; and that the note sued upon was given in lieu of said Dunlap's note, with the knowledge of Haggerty, the jury will find for defendant Hurd." The converse of the proposition was found by the jury to be the fact.

The struggle between these parties was, whether the note in suit was given to pay the individual debt of Dunlap, or of the firm of Dunlap, Wright & Co., of which the appellant was one. If it was the former, and known to be so by the party loaning the money, he could not recover. If, on the other hand, the note first given was the individual note of Dunlap, but given to raise money to pay a firm debt, and its proceeds were appropriated to such purpose, the appellant, as one of the firm, would be liable on the renewal note in suit.

It is evident from Mott's testimony, that appellant knew about this note of August 27th, and that the note in suit was given to renew it. He says he has seen Mr. Haggerty once; heard him converse about the loan in controversy in this suit; Mr. Haggerty came into the office of Hurd and wanted to see some books of account; Dunlap's name was spoken of; Hurd asked Haggerty what per cent. interest the note was on; he evaded the question; two or three other questions were put, which Haggerty did not answer; afterwards, while Haggerty was there, Hurd asked what the date of that Dunlap note was; he said, 27th August, 1855; during the conversation he also said the note in suit was given to take up that note; he said the amount borrowed was $600; he either said it was $600, or assented to Mr. Hurd's question if it was not for that amount; can't state whether he said who borrowed it or not; my impression is, from what was said, that Dunlap gave his note first, but whether from what Haggerty said to Hurd, cannot say; Haggerty was taking copy of some account in the books of Dunlap, Wright & Co. On his cross-examination, he says Dunlap's name was mentioned; it was a kind of conversation that he could not follow out; Haggerty was looking over the books;

12

Hurd asked Haggerty what interest was to be paid ; he evaded the question ; after a while Hurd asked what the amount of the first note was, and he said, $600.

It does not appear that appellant made any objection to the arrangement, and it is fairly inferable that he knew the proceeds of this August note, as also the proceeds of another note given by Dunlap, at the same time, to D. L. Wentworth, went to pay the debt of his firm, due to Wilcox, Lyon & Co., for which all the partners were bound, and it could make no difference to the appellant whether the money was accounted for by the firm to Dunlap, who borrowed it, or to the parties directly of whom he borrowed it for the firm.  It was then no fraud upon the firm for Dunlap to execute the firm note to the original lender.

The case of *Richardson* v. *French*, 4 Metcalf, 577, is directly in point.  That was a case where an administrator, a member of a partnership, applied to the partnership concerns money which belonged to the estate of his intestate, and afterwards gave the note of the firm to a creditor of the intestate, to whom such money as he had applied to the partnership concern, was due, the note to be in discharge of the creditor's claim on the estate of the intestate.  The firm was held bound to pay the note.

The cases cited by appellant, do not reach or apply to this case.  They are cases where the note sued on was the individual note of the partner.  Here the note is made by the partnership.

The record shows Wright was served with process, so that there is no error in taking judgment against him.

The judgment is affirmed.

*Judgment affirmed.*